Michelle B. Baker, Esq.   CSBN 199130
**BAKER LAW GROUP, LLP**
420 Deseo Avenue
Camarillo, CA 93010
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

Attorneys for Defendant
SOUTH BEACH SKIN CARE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEIDRE HALL, an individual, | CASE NO. 2:13-CV-08905-RSWL-PJWx |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURES RULE 12(B)(6) AND EXPIRATION OF STATUTE OF LIMITATIONS** |
| vs. | |
| SOUTH BEACH SKIN CARE, INC., a Florida Corporation, | |
| Defendant. | Date: March 25, 2014<br>Time: 10:00 a.m.<br>Courtroom: 21 |
| | Assigned Judge: Hon. Ronald S.W. Lew |

**TABLE OF CONTENTS**

I.   INTRODUCTION ……………………..……………………………  1

II.  FACTUAL BACKGROUND …………….....…………………………  1

III. DISMISSAL IS WARRANTED UNDER 12(b)(6) ………………………  3

  A. Plaintiff Cannot Plausibly Allege a Claim for False Endorsement……  3

  B. Plaintiff Cannot Plausibly Allege a Claim for Misappropriation
     of Publicity Rights in Light of Her Consent …………….…………  4

IV.  PLAINTIFF'S SECOND COUNT IS BARRED BY THE STATUTE
     OF LIMITATIONS. …………………………………………………….  6

V.   CONCLUSION ……..….…………………………………………….  8

**BAKER LAW GROUP, LLP**
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone:  (858) 452-0093
Facsimile:    (858) 750-1049

# TABLE OF AUTHORITIES

Cases

*Alberghetti v. Corbis Corp.*, 476 Fed. Appx. 154, 154-155 (9th Cir. 2012) ……….. 1, 3, 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ……………………………………. 3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) …..………. 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) …………..………….. 3

*Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ……………..…………….... 3

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. Cal. 2002) ……………. 4

*Christoff v. Nestle USA, Inc.*, 47 Cal. 4th 468, 476 n.7 (Cal. 2009) ………………... 6, 7

*Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) …………..………………….. 6

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. Cal. 2001) ……….. 4

*Jones v. Corbis Corp*, 815 F.Supp.2d 1108 (C.D. Cal. 2011) …………..………….. 1, 2, 5

*L.S. Heath & Son v. AT&T Info. Sys.*, 9 F.3d 561, 575 (7th Cir. Ill. 1993) …..……. 4

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) …………..………………….. 3

*Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. Cal. 1994) ……………………. 3

*Oja v. U. S. Army Corps of Eng'rs.*, 440 F.3d 1122, 1133 (9th Cir. 2006) …………. 5, 7

*Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ……………..…………… 3

*Shively v. Bozanich*, 31 Cal. 4th 1230, 1245-46 (Cal. 2003) …………..………….. 6

*Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 404 (Cal. App. 4th Dist. 2004) …………..………………………………………….. 7

*Wendt v. Host Int'l*, 125 F.3d 806, 812 (9th Cir. Cal. 1997) …………..………….… 4

*Winter v. DC Comics*, 30 Cal.4th 881, 891 (Cal. 2003) ……………..……………. 3

Statutes

15 U.S.C. §1125(a) …………..………………………………………………..…. 2, 4

Fed.R.Civ.P 12(b)(6) …………..…………………………………………………. 1, 3

Cal. Civ. Pro. Code § 339 …………..……………………………………………... 6

California Civil Code § 3344 …………..………………………………….......... 2, 4, 5, 6

California Civil Code § 3425.3 …………..………………………………………….. 6, 7

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

Defendant, South Beach Skin Care, Inc. ("Defendant"), by and through undersigned counsel and pursuant to Fed.R.Civ.P 12(b)(6), hereby moves to dismiss Deidre Hall's ("Plaintiff's") Complaint in its entirety. In support thereof, Defendant states as follows:

## I.   INTRODUCTION

During the 2009 Sundance Film Festival, the Plaintiff, a former soap opera actress, visited the booths of several companies at a gifting suite where she voluntarily posed with the Defendant's product and consented to have her photograph used by the Defendant. These gifting suites are commonplace at film festivals and major award shows; and, as shown in Exhibit A to Baker Declaration filed concurrently herewith, the Plaintiff Deidre Hall is no stranger to these and other gifting suites. Now, five years later, she has sued the Defendant over the use of her photograph, despite her voluntary participation in the event, her consent to be photographed, and her implied endorsement. Dismissal is warranted due to: (1) the failure to state a claim upon which relief can be granted; and (2) the fact that the Plaintiff's state law claim is time barred. *See Jones v. Corbis Corp*, 815 F.Supp.2d 1108 (C.D. Cal. 2011), and *Alberghetti v. Corbis Corp.*, 476 Fed. Appx. 154, 154-155 (9th Cir. 2012).

## II.   FACTUAL BACKGROUND

In 2009, Defendant was one of several companies participating in a gift suite[1] organized by a company called GBK, and held at the Sundance Film Festival. Similar to the red carpet appearance at issue in *Jones*, it is well known that, in gifting suites, the participating companies will agree to gift their products, such as the Defendant's LIFECELL® skin cream at issue here, in exchange for which the visitors agree to have their pictures taken with the products, and used by the participating companies. *Jones v. Corbis Corp*, 815 F.Supp.2d 1108 (C.D. Cal. 2011). Beyond the widespread knowledge of this practice, prior to voluntarily entering the foregoing gift suite, the Plaintiff would have been greeted by a prominent sign providing notice that (1) she was entering an area where photography, audio and video recording would occur; and (2)

---

[1] As indicated above, gift suites are commonly known as "a location where several companies give products to celebrities in exchange for the celebrity taking a photo with the product or on a red carpet while standing in front of a press wall displaying company logos." *See* Wikipedia.org, http://en.wikipedia.org/wiki/Gift_suite.

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

1  that she would be consenting to use of said media by entering the area. The event was reported
2  by, among others, *Fushion Magazine*, which included the following picture of the Plaintiff,
3  posing voluntarily with another company's beauty product[2].



12  Thus, it is clear that the Plaintiff entered the aforementioned gifting suite with full
13  knowledge of the nature of the event[3]. Despite having voluntarily participated in this gifting
14  suite and having voluntarily accepted Defendant's products in exchange for her endorsements,
15  Plaintiff now asserts that these photographs and statements – all of which were taken and
16  published nearly five (5) years ago – were an unauthorized exploitation of her name and
17  likeness. Specifically, Plaintiff's Complaint alleges a false endorsement claim under the Lanham
18  Act, 15 U.S.C. § 1125(a)(1)(A), as well as a second cause of action for statutory
19  misappropriation of right of publicity (Civil Code § 3344).
20  As discussed in more detail below, the Plaintiff has failed to state a claim upon which
21  relief may be granted, warranting the dismissal of this case. *See Jones v. Corbis Corp*, 815
22  F.Supp.2d 1108 (C.D. Cal. 2011). Dismissal of the Plaintiff's state law claim for
23  misappropriation of the right of publicity is also warranted on the basis that those claims are

---

[2] *See* http://www.fushionmag.com/entertainment/celebrityblvd/2009-sundance-gifting-suites/. Per the report, visitors to the Sundance GBK suite "received spa treatments, makeovers from Mistura Beauty Solutions, handmade soaps and bath salts from Hollywood Skin Factory, Lifecell Skin Cream, which makes lines and wrinkles vanish before your eyes, and gift certificates for a year's worth of beauty treatments from Beverly Hills Plastic Surgery."

[3] There can be no doubt that the Plaintiff voluntarily entered the gifting suite. In fact, upon information and belief, the Plaintiff's agents and representatives routinely contact gifting suite coordinators in advance of an award shows or similar events in order to request her admission to the gifting suites.

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

1 time barred by the statute of limitations and the single publication rule. *See Alberghetti v. Corbis*
2 *Corp.*, 476 Fed. Appx. 154, 154-155 (9th Cir. 2012) ("The single-publication rule applied to the
3 images posted on Corbis's website, and appellants did not bring this action until August 2009,
4 three years after the last image was posted in August 2006."); *citing Oja v. U. S. Army Corps of*
5 *Eng'rs.*, 440 F.3d 1122, 1133 (9th Cir. 2006) (the single publication rule should be applied to the
6 vast majority of Internet publications).

### III.     DISMISSAL IS WARRANTED UNDER 12(b)(6).

8   A motion to dismiss for failure to state a claim upon which relief can be granted "tests
9 the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
10 Dismissal may be granted pursuant to Rule 12(b)(6) based upon either a "lack of a cognizable
11 legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *See*
12 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Dismissal is warranted
13 under Rule 12(b)(6) if no relief could be granted under any set of facts that could be proved
14 consistent with the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). A
15 plaintiff must do more than merely raise the possibility that some set of facts might support
16 recovery; it must set forth factual allegations that "raise a right to relief above the speculative
17 level." *Id.* at 555. In sum, "only a complaint that states a plausible claim for relief survives a
18 motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   When ruling on a motion to
19 dismiss, a court may consider exhibits submitted with the complaint, as well as those documents
20 "whose contents are alleged in a complaint and whose authenticity no party questions, but which
21 are not physically attached to the pleading." *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th
22 Cir. 1994); *see also Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).   To that end, the
23 California Supreme Court has noted that claims of misappropriation "can often [be] resolve[d] .
24 . . as a matter of law simply by reviewing the [defendant's] work in question...." *Winter v. DC*
25 *Comics*, 30 Cal.4th 881, 891 (Cal. 2003).

26   **A.     Plaintiff Cannot Plausibly Allege a Claim for False Endorsement**
27   Plaintiff has failed to state a claim for false endorsement based on a manifestation of
28 consent in posing for the photograph and accepting Defendant's product. A claim for false

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

1  endorsement requires that an advertiser mislead the public by falsely stating that another person
2  or company has sponsored the advertiser's product. Gilson on Trademarks §7.02[6][e]; 15
3  U.S.C. §1125(a). The relevant inquiry in determining false endorsement is the likelihood of
4  confusing consumers into believing an individual has endorsed a product. *See Cairns v.*
5  *Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. Cal. 2002); *See also Wendt v. Host Int'l*, 125
6  F.3d 806, 812 (9th Cir. Cal. 1997). However, if the individual has, in fact, endorsed the
7  product, the claim for false endorsement must necessarily fail. *L.S. Heath & Son v. AT&T Info.*
8  *Sys.*, 9 F.3d 561, 575 (7th Cir. Ill. 1993).

9  Plaintiff's own actions in accepting a gifted product from Defendant and agreeing to
10 pose with the product in the familiar territory of a gifting suite clearly and overwhelmingly
11 manifest Plaintiff's endorsement of the product. Further, Plaintiff is no stranger to gifting suites
12 and the attendant industry practices. Therefore, Plaintiff must have known, based on her conduct
13 and experience that accepting the gifted product and posing for the photograph constituted a
14 manifestation of endorsement of the product to all observers. Consequently, Plaintiff cannot
15 plausibly assert a cause of action for false endorsement.

### B. Plaintiff Cannot Plausibly Allege a Claim for Misappropriation of Publicity Rights in Light of Her Consent

18 "To sustain a common law cause of action for commercial misappropriation, a plaintiff
19 must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's
20 name or likeness to defendant's advantage, commercially or otherwise; (3) *lack of consent*; and
21 (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. Cal. 2001)
22 (emphasis added, internal quotations omitted). The California Civil Code has provided a
23 statutory remedy in addition to that offered at common law, and it is under this section that
24 Plaintiff has brought the present action. [¶¶ 5, 21, 26 and Title of Count 2 of the Complaint].
25 The statutory cause of action requires each element of the common law cause of action with the
26 further addition of a knowing use by the defendant and a direct connection between the alleged
27 use and the commercial purpose. *Downing* 265 F.3d at 1001; California Civil Code § 3344. As
28 Plaintiff in the present action has failed to state a claim for misappropriation of publicity rights,

1 notably because Plaintiff cannot possibly allege a lack of consent, dismissal of Plaintiff's claim
2 is warranted.

3       Consent need not be express or reduced to writing to have been given in the context of
4 misappropriation of publicity rights. *Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. Cal.
5 1994). In fact, consent can be manifested by a party's conduct and the circumstances of the case.
6 *Id*. (granting summary judgment after finding consent based on plaintiff's excitement over the
7 use of his likeness coupled with lack of objection for many months); *Jones* 815 F.Supp. at 1113-
8 1114.  In *Jones*, the Plaintiff, an actress and vocalist, sued for misappropriation of publicity
9 rights under §3344 with respect to photos taken of her while walking down the red carpet at an
10 entertainment event. *Id*. at 1109-1111. The photos were ultimately posted online, where licenses
11 for their use could be purchased. *Id*. The court ruled that the Plaintiff consented to the
12 photographs based on: (1) Plaintiff's conduct in choosing to walk down the red carpet, knowing
13 she would be photographed; (2) the common practice in the industry, and knowledge that the
14 photographs would be widely disseminated; (3) Plaintiff's voluntary actions in posing for the
15 photographs, and agreeing upon request to smile or look in a photographer's direction; (4) the
16 fact that, at least once at such an event, notice was posted at the entrance that participants
17 consented to being photographed and to the exploitation, without limitation, of their likeness in
18 connection with the event; (5) the fact that Plaintiff knew and understood how photos were to be
19 distributed or licensed; and (6) on the principle that "it would be contrary to established industry
20 practices for a celebrity to consent to the sale and distribution of her photographs but not
21 consent to the display of the photographs to potential customers to facilitate sales." *Id*. at 1114,
22 1116. Consequently, in rejecting the plaintiff's argument that her subjective beliefs determine
23 consent, the Court found summary judgment for the defendant was warranted. *Id*. at 1117.

24       Similarly, Plaintiff in the present action has failed to state a claim because, by Plaintiff's
25 participation in the gifting suite, Plaintiff cannot allege the requisite lack of consent to support a
26 claim under §3344. It is established industry practice for celebrities entering a gifting suite to be
27 photographed with products, which the celebrities receive as gifts, in exchange for posing with
28 these products. Much as has been the case with photographs of celebrities on red carpets, it

1 would run counter to the established practices of the industry were celebrities to accepting
2 products as gifts, pose for photographs prominently displaying the products, and then not
3 consent to display of the photographs to potential customers to facilitate sales. Further, as to
4 Plaintiff's personal manifestation of consent, it is clear that gifting suites are familiar territory.
5 Not only was Defendant's product not the only one of which Plaintiff availed herself at that very
6 event, but rather Defendant finds itself in particularly crowded company when it comes to other
7 products Plaintiff has similarly accepted in exchange for photographs. In addition, Plaintiff
8 accepted a product as a gift from Defendant, voluntarily displayed the product, and posed for a
9 photograph with the product. Consequently, Plaintiff cannot possibly allege, as §3344 requires,
10 a lack of consent where she knew and understood that photographs at gifting suites would
11 ultimately be used to promote the products given as gifts based on Plaintiff's substantial
12 attendance at other gifting suites and similar events. It therefore follows that, absent such an
13 allegation of lack of consent, Plaintiff cannot plausibly state a claim upon which relief can be
14 granted.

## IV. PLAINTIFF'S SECOND COUNT IS BARRED BY THE STATUTE OF LIMITATIONS

California's statutory publicity rights are governed by a two-year statute of limitations. *Christoff v. Nestle USA, Inc.*, 47 Cal. 4th 468, 476 n.7 (Cal. 2009) (applying two-year statute of limitations under Cal. Civ. Pro. Code § 339 to California publicity right claim); *see also Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) ("The statute of limitations for infringement of the right of publicity in California is two years.") The statute of limitations begins to run from the initial publication of the allegedly infringing work to the general public, "regardless of when the plaintiff . . . became aware of the publication." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245-46 (Cal. 2003).   Claims for misappropriation of names or likeness are also subject to the "single publication" rule codified in California Civil Code § 3425.3. *See Christoff*, 47 Cal. 4th at 476. Specifically, California Civil Code § 3425.3 states that:

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions. Cal. Civ.Code § 3425.3.

In determining the applicability of this rule, a "trial court should consider as well whether the production and distribution of labels was predetermined by a single initial decision or whether [the defendant] made at any relevant time a conscious, deliberate choice to continue, renew or expand the use of labels bearing plaintiff's misappropriated image." *Christoff*, 47 Cal. 4th at 496 (concurring opinion); *see also Alberghetti v. Corbis Corp.*, 476 Fed. Appx. 154, 154-155 (9th Cir. 2012) ("The single-publication rule applied to the images posted on Corbis's website, and appellants did not bring this action until August 2009, three years after the last image was posted in August 2006."); *citing Oja v. U. S. Army Corps of Eng'rs.*, 440 F.3d 1122, 1133 (9th Cir. 2006) (the single publication rule should be applied to the vast majority of Internet publications); *See also Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 404 (Cal. App. 4th Dist. 2004) (applying the single publication rule to statements published on the Internet in recognition of a strong need to protect Web publishers from "almost perpetual liability" for allegedly tortious statements).

In *Alberghetti*, the Defendant, Corbis, a photo-licensing company, provided a catalog of roughly five million photographs available to its users, who can license to use copyrights to these photographs. *Alberghetti v. Corbis Corp.*, 713 F. Supp. 2d 971, 972-973 (C.D. Cal. 2010). These photographs were matched to search terms, such as the name of a person appearing in the photograph, which users were able to enter to find photographs within the catalog. *Id.* at 973. Users of Corbis's website were able to view and select images for download pursuant to a paid-for license agreement. *Id.* at 980. Corbis's users would view the file, then as part of the license and download process would provide certain information such as the purpose of the use of the file and the industry in which the user is engaged. *Id.* at 974. Plaintiffs, Alberghetti and Pointer,

1 both artists and entertainers, alleged that the catalog included photographs in which each of
2 them appeared and used their names as search terms. *Id*. at 973. Alberghetti and Pointer asserted
3 infringement of their publicity rights on the theory that Corbis's use of their names and the
4 photographs featuring them helped Corbis sell its photo copyright licenses to its users. *Id*. at
5 973. In deciding that Corbis's use of the images constituted a single publication, the court
6 rejected arguments that, for example, each user license was a distinct product and therefore a
7 subsequent, new publication. *Id*. at 980.   Corbis first provided the images at issue more than
8 two years before the suit was brought. *Id*. Therefore, since the action was brought after
9 expiration of the applicable statute of limitations, measured from the first and single legally
10 operative publication of the images, the court held that the publicity rights claims were barred.
11 *Id*. at 982, *aff'd Alberghetti v. Corbis Corp.* 476 Fed. Appx. at 154-155.

12     The Plaintiff concedes that the photograph at issue in the present case was taken at an
13 event held in 2009.  Further, by Plaintiff's own admission, it was initially published in 2009. [¶3
14 of Complaint]. Defendant's action of posting the image online constituted a publication under
15 the single publication rule. Therefore, the two-year statute of limitations applicable to the
16 present case began in 2009 and expired in 2011, well before the December 2013 filing of the
17 present suit. It must then follow that Count II of Plaintiff's Complaint should be dismissed as
18 being barred by the statute of limitations, and Defendant respectfully requests same.

19

20     **V.   CONCLUSION**.

21     As discussed above, Plaintiff has failed to provide any factual basis permitting this Court
22 to draw any inference that Defendant is liable for the allegedly infringing acts.  Furthermore, the
23 Plaintiff's state law claims are admittedly barred by the statute of limitations and the single
24 publication rule.  For these reasons, Plaintiff's Complaint should be dismissed for failure to state
25 a claim upon which relief can be granted.
26
27
28

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

1   WHEREFORE, Defendant respectfully requests that the Court grant the instant motion
2 and enter an Order of Dismissal of the Plaintiff's claims **with prejudice**, and for such other and
3 further relief that the Court may deem appropriate.

4

5 Dated: February 3, 2014

6                                                                                       /s/

7   _____

8                                                                           Michelle B. Baker, Esq.
                                                                            Joshua Entin, Esq.[4]
9                                                                           Oliver Ruiz, Esq.[5]

BAKER LAW GROUP, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 452-0093
Facsimile: (858) 750-1049

---

[4] Pro Hac Vice Application is pending.
[5] Pro Hac Vice Application is pending.